**UNITED STATES DISTRICT COURT**
**District of New Jersey**

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**
**ORIGINAL TO BE FILED WITH THE CLERK OF THE COURT**

March 26, 2007

Re:    **J&J Sports Productions, Inc. v. Perdomo**
       **Docket No. 06-1374**

Dear Parties:

On March 23, 2006, Plaintiff J&J Sports Productions, Inc. filed a complaint against Defendants Freddy Perdomo and his business, Freddy Shoe Repair.[1]  Plaintiff alleged that it had the right to distribute the Castillo/Corrales II boxing match on October 8, 2005 and that Defendants illegally and willfully intercepted the program for the purpose of obtaining a commercial or financial advantage.

In particular, Plaintiff alleges that Defendants unlawfully intercepted the boxing match when they "used an illegal satellite receiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast which originated via satellite uplink and then re-transmitted via satellite or microwave signal to various cable and satellite systems."  Comp. at ¶ 16.[2]  Plaintiff claims that this conduct violates both 47 U.S.C. § 553 and § 605.  See Comp. at ¶¶ 18, 26 and pp. 6-7.  Plaintiff seeks maximum and enhanced statutory damages against Defendants under both statutory sections.  See Comp. at ¶¶ 19, 27 and pp. 6-7. Plaintiff also seeks attorney's fees and costs.

Defendants have not answered Plaintiff's complaint.  Plaintiff requested and obtained a clerk's entry of default against Defendants.  Plaintiff has now filed a motion for default judgment against Defendants pursuant to Fed. R. Civ. P. 55(b).  For the following reasons, Plaintiff's motion for default judgment is granted in part and denied in part.

---

[1]  Plaintiff indicated that Freddy Shoe Repair was also known as Fredy Shoe Repair and Freddy's Dr. Shoe Repair.

[2]  References to "Comp. at ¶ __" are to Plaintiff's complaint filed on March 23, 2006.

Plaintiff's requests for relief under sections 553 and 605 and for enhanced statutory damages against Defendants are inconsistent with legal authority and disingenuous.  The Third Circuit made clear in TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (2001) that piracy of television programs, such as that which occurred here, either falls within the purview of section 553 or section 605, but not within both statutes:

> We therefore conclude that § 605 encompasses the interception of satellite transmissions "to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system," and no more.  H.R.Rep. No. 98-934, at 83, reprinted in 1984 U.S.C.C.A.N. at 4720.  Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.

TKR Cable Co., 267 F.3d at 207.  Thus, sections 553 and 605 provide for alternative forms of relief depending on *how* the defendant intercepted the program at issue —i.e., the interception of actual airborne satellite transmissions (section 605) or the interception of transmissions once they reach the cable system (section 553).

If the defendant intercepted the transmission while it was within the cable distribution system, an aggrieved party may seek statutory damages[3] "in a sum of not less than $250 or more than $10,000 as the court considers just" pursuant to section 553.  47 U.S.C. § 553(c)(3)(A)(ii).  The Court may award enhanced statutory damages "by an amount of not more than $50,000" if the violation was "committed willfully and for purposes of commercial advantage or private financial gain."  47 U.S.C. § 553(c)(3)(B).

However, if instead, the defendant intercepted the transmission prior to the time it reached the cable distribution system, while the transmission was airborne, section 605 authorizes damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just."  47 U.S.C. § 605(e)(3)(C)(i)(II).  Similar to section 553, if the Court finds that defendant's violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" the Court may award enhanced damages of no more than $100,000.  47 U.S.C. § 605(e)(3)(C)(ii).

Plaintiff does not allege *how* Defendants intercepted the boxing match at issue.  Instead, Plaintiff repeatedly alleges that Defendants either intercepted the signal in air (which would trigger section 605) or intercepted a cable signal (which would trigger section 553).   As the Third Circuit made clear in TKR Cable Co., it needs to be one or the other.  The Court cannot determine which statutory section is appropriate without facts describing the manner in which the boxing match was allegedly pirated.   See Garden City Boxing Club v. Stone, 285 F. Supp. 2d

---

[3]  Under both section 553 and 605, an aggrieved party may seek actual damages instead of statutory damages.  See 47 U.S.C. §§ 553(c)(3)(A)(i) and 605(e)(3)(C)(i)(I).  Plaintiff does not seek actual damages in this lawsuit.

447, 452 (D. Del. 2003) (stating that the "court cannot adequately evaluate whether defendants' actions were a violation of either §§ 553 or 605 without facts describing the manner in which the Tyson fight was allegedly pirated").

Considering that Defendants have not answered the instant complaint, it is possible that Plaintiff does not know exactly how the boxing match was intercepted. The Court is unsure as to whether the manner of Defendants' purported interception of the boxing match is something Plaintiff can discern without an admission or discovery from Defendants. Giving Plaintiff the benefit of the doubt, the Court will not fault Plaintiff at this time for failing to plead the particular manner of interception since this may be exclusively within Defendants' knowledge.

However, despite the foregoing, Plaintiff must certainly be aware of the Third Circuit's directive in TKR Cable Co. that relief for this type of piracy must fall under either section 553 or section 605, but not under both statutes. Despite this controlling precedent, Plaintiff and its attorney, Wayne Lonstein, Esq., persist on filing complaints, including the instant one, seeking relief under *both* statutes for piracy of satellite transmissions. See Comcast Cable Comm. v. Adubato, 367 F. Supp. 2d 684, 689-90 (D.N.J. 2005); see also Garden City Boxing Club v. Stone, 285 F. Supp. 2d 447, 452 (D. Del. 2003) (refusing to grant summary judgment in favor of plaintiff, who was represented by the Lonstein Law Office, where plaintiff sought relief under both sections 553 and 605 and pursuant to TKR Cable Co., only one such section was applicable depending on the manner of interception); see also Garden City Boxing Club v. Fernandez, No. 05-3873 (May 30, 2006) (Linares, J.) (refusing to grant default judgment and dismissing case where plaintiff, who was represented by Wayne Lonstein, Esq., sought damages under both section 553 and 605). The undersigned explicitly chastised Mr. Lonstein for seeking damages under both sections 553 and 605 in Garden City Boxing Club v. Fernandez, No. 05-3873.

Plaintiff does not point out to the Court that it is unable to determine the precise method of interception and that depending on the method used, relief is appropriate under *either* section 553 or section 605. Instead, Plaintiff seeks relief in the complaint under *both* statutes and confusingly, submits various proposed orders and other documents to the Court alternatively seeking relief under either section 553 or 605, often mixing up the amount of statutory damages available under each section. See, e.g., Proposed Order for Default Judgment at p. 2 (seeking statutory damages of up to $10,000 and enhanced damages of up to $100,000 pursuant to section 553); Gagliardi Affidavit at p. 5 (June 21, 2006) (seeking statutory damages of up to $10,000 and enhanced damages of up to $100,000 under section 605); Brief in Support of Default Judgment at p. 9 (seeking statutory damages of up to $10,000 and enhanced damages of up to $100,000 under section 533). In particular, Plaintiff sometimes asks for $100,000 under section 553 when the maximum amount of enhanced statutory damages recoverable under that statute is $50,000.

Moreover, Plaintiff seeks enhanced statutory damages against Defendants because their conduct was purportedly willful and they allegedly intercepted the program with the purpose of obtaining a commercial advantage or for private financial gain. Plaintiff's attorney, Mr. Lonstein, has a history of filing complaints in this district seeking such enhanced statutory

3

damages with no factual basis.  See Adubato, 367 F. Supp. 2d at 685 & n.1 (finding that Wayne Lonstein, Esq., has frequently sought enhanced statutory damages on behalf of his clients without factual or legal bases and has misled courts into granting improper default judgments in favor of his clients).   In particular, in his opinion in Comcast Cable Comm. v. Adubato, the Honorable Dickinson Debevoise noted that it was "particularly disturbing" that Mr. Lonstein played a role in his client's efforts to obtain "unauthorized, excessive, and oppressive damages against a defaulting defendant."  See id. at 692, 695.[4]  Judge Debevoise noted that Mr. Lonstein agreed to amend more than 200 New Jersey pleadings that he had filed without a good faith basis for seeking enhanced statutory damages and to ensure that all improperly obtained default judgments were vacated.  See Adubato, 367 F. Supp. 2d at 685 n. 1 & 695-96.  Clearly, counsel has not followed Judge Debevoise's directives because he filed the instant complaint, after Judge Debevoise's above-referenced decision, again seeking enhanced statutory damages with no good faith basis for doing so.

Plaintiff provides no factual basis to support its allegation that Defendants intercepted the program for commercial or financial gain.  See Adubato, 367 F. Supp. 2d at 689 ("Nowhere in the complaint [which was also filed by Mr. Lonstein] . . . is there any allegation which would support the charge that defendant acted for the purposes of his financial gain.").  Defendants are a shoe repair store and its owner.  Plaintiff's own submissions reveal that the boxing match at issue was viewed by five people at the shoe repair store at approximately midnight.  See Piracy Affidavit at p. 1 (Oct. 16, 2005).[5]  Plaintiff's claim that Defendants' interception of the program "most likely led to an increased number of patrons and, thus, an increase in profits from food and beverages," is absurd.  See Brief in Support of Default Judgment at p. 3.  There is no support for Plaintiff's bald assertion that his shoe repair store by day turned into a sports bar or restaurant by night.  Plaintiff admits that no cover was charged for admission to the shoe repair store that night.  See id.  Further, Plaintiff's own submissions reveal that no drinks were served at viewing.  See Piracy Affidavit at p. 1 (Oct. 16, 2005).  There are no allegations that Defendants were making enhanced profits off of shoe repair during the midnight showing of the boxing match.  In addition, Plaintiff admits that it has no evidence that Defendants have exhibited any other events at the shoe repair store.  See Brief in Support of Default Judgment at p. 5.

Accordingly, for the foregoing reasons, the Court, in its sound discretion, grants in part and denies in part Plaintiff's motion for default judgment.  See Fed. R. Civ. P. 55(b); see also

---

[4]  In Adubato, Judge Debevoise granted Comcast's motion for default judgment in part, authorizing a final injunction which enjoined the defendant from further using a cable decoder device to illegally intercept programs.  However, given Comcast's and Mr. Lonstein's conduct, Judge Debevoise refused to allow any additional relief, including damages, costs, and attorney's fees.  See Comcast Cable Comm. v. Adubato, 367 F. Supp. 2d 684, 696 (2005).

[5]  The "Piracy Affidavit" was executed by James Rahill, and independent auditor, who visited Defendants' establishment on October 8, 2005 and purportedly viewed the unauthorized display of the boxing match.

Trucking Employees of North Jersey Welfare Fund, Inc. v. Moskowitz Motor Transp., Inc., No. 05-5605, 2007 WL 608436, at *2 (D.N.J. Feb. 23, 2007) (citing Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984)).   Attached to this opinion is an order granting Plaintiff a default judgment against Defendants in the total amount of $1,200.00, which is an authorized amount of statutory damages for the illegal interception of programs under either section 553(c)(3)(A)(ii) or section 605(e)(3)(C)(i)(II).  This is the amount Plaintiff claims that Defendants would have had to pay to legitimately purchase the right to commercially exhibit the boxing match.  See Brief in Support of Default Judgment at p. 6.  The Court refuses to enter a judgment against Defendants for enhanced statutory damages under either section 503 or section 605.  The Court also refuses to enter a judgment in favor of Plaintiff for attorney's fees and costs considering the conduct of Plaintiff and its attorney.

/s/ Jose L. Linares
UNITED STATES DISTRICT JUDGE